## JOHN JOLLY v. STATE.

No. A-525.   Opinion Filed March 21, 1911.

1. INDICTMENT—Regularity of Return—Presumptions. Where an indictment recites that it is presented by the grand jury, and it is properly signed by the county attorney, indorsed "A True Bill" by the foreman, and indorsed, "presented in open court by the foreman of the grand jury in the presence of the grand jurors, and filed in open court," signed by the clerk and filed by the clerk, it will be presumed, in an absence of a showing to the contrary, that it was duly returned in open court. notwithstanding that no entry of the fact is made upon the minutes or journal of the court.

2. APPEAL—Record—Indictment and Indorsements. The original indictment and its indorsements constitute a necessary part of the record, and whatever is properly shown by them is considered as shown by the record.

3. APPEAL—Record—What Constitutes. Section 6919, Snyder's Sts., provides that the following papers shall constitute the record of the action: "1st. The indictment and a copy of the minutes of the plea or demurrer. 2nd. A copy of the minutes of the trial. 3rd. The charges given or refused, and the indorsements, if any thereon; and 4th. A copy of the judgment."

4. APPEAL—Authenticity of Indictment—Time for Objections. The authenticity of an indictment should be raised by motion to quash and set aside or by plea in abatement in the trial court. It cannot be raised for the first time on appeal.

5. APPEAL—Record—Formulary of Oaths. It is no part of the duty of the clerk to place on record the formulary of words in which the oath to the bailiff is couched.

6. APPEAL—Irregularity of Oaths—Time for Objections. Where a party desires to avail himself of the irregularity of administering the oath to the bailiff, the attention of the court should be called to it at the time the oath is taken.

7.    **APPEAL—Harmless Error.** It is the duty of the appellate court to give judgment without regard to technical errors. or defects, or to exceptions which do not affect the  substantial  rights  of plaintiff in error.

(Syllabus by the Court.)

*Appeal from the District Court of Pittsburg County; Preslie B. Cole, Judge.*

John Jolly, was convicted of conjoint robbery and sentenced to imprisonment for life, and he appeals.  Affirmed.

John Jolly, the plaintiff in error, was, at the October, 1908, term of the district court of Pittsburg county, jointly indicted with Bill Colbert and Claude Colbert for the crime of conjoint robbery.  The caption and formal part of said indictment is as follows:

"State of Oklahoma, Pittsburg County—ss.

In the District Court of the Fourth Judicial District, of the State of Oklahoma held in and for Pittsburg County, in said State.

State of Oklahoma,

   vs.                              } Indictment.

Bill Colbert, Claud Colbert

John Jolly,

"At the October term, a term of the District Court of the Fourth Judicial District of the State of Oklahoma, held in and for Pittsburg county, in the State of Oklahoma, at the city of McAlester, and begun on the 5th day of October, in the year of our Lord, 1908, the jurors of the grand jury of said county, good and lawful men, then and there returned, tried, empaneled, sworn and charged, according to law, to diligently enquire into, and true presentment make of, all public offenses against the said state of Oklahoma, committed or triable within said county, upon their said oaths, in the name and by the authority of the said State of Oklahoma, do present and find that, in said county of Pittsburg, in said State of Oklahoma, on the 12th day of January in the year of our Lord, one thousand nine hundred and eight."

And which indictment has the following indorsements:

"Indictment In the District Court, of the Fourth Judicial District of the state of Oklahoma, held in and for Pittsburg county.

"State of Oklahoma
      vs.
"Bill Colbert, John Jolly, Claud Colbert,
              "Indictment for Robbery.
                   "A true Bill.
                          "JACOB A. MERCER,
                        "Foreman of the Grand Jury.

"Presented in open court by the foreman of the grand jury in the presence of the grand jurors, and filed this 28th day of October, 1908.                 W. B. RILEY,
                        "District Clerk.
            "By C. L. HEFFEY, Deputy.
                "T. R. DEAN,
                "County Attorney.

"Bail is hereby fixed at $1,500.
                "PRESLIE B. COLE,
                  "District Judge.
"Filed in open court Oct. 28, 1908.
                "W. B. RILEY, Clerk of Court.
"WITNESSES........................................"

Upon arraignment, he entered a plea of not guilty and demanded a severance, which was granted.

The facts and circumstances of the case are stated in the companion case of *Bill Colbert v. The State*, 4 Okla. Cr. 500, 113 Pac. 558, and it is unnecessary to repeat them here, further than to add:

The defendant, testifying on his own behalf, denied that he participated in the robbery and professed to account for his movements during the night of January 12, 1908, by stating that after leaving Bill Colbert's house that evening, he went to a joint where with several others, including a couple of colored women, a bottle of whiskey was drunk, and he then went with one of the women to an empty house and stayed there until late in the night; then returning to Bill Colbert's house, he met Claude Colbert and went with him to another joint and from there returned to Bill Colbert's house and went to bed about midnight. He is, however, not corroborated by any witness. He also undertook to ex-

plain his possession of White's money by stating that he won it in a crap game that Sunday afternoon.

His cross-examination showed that he had been convicted of a crime and had been but recently discharged from the penitentiary at Ft. Leavenworth.

The judgment and sentence was entered on January 16, 1909. Defendant gave notice of an appeal, and filed a pauper's affidavit and asked that the court order a transcript of the record to be furnished for his appeal. Whereupon it was ordered by the court that a transcript be furnished at the expense of the county. An appeal was perfected by filing in this court on January 3, 1910, a petition in error with case-made attached, together with proof of service of notices of appeal.

*Wiley Jones*, for plaintiff in error.

*Chas. West*, Atty. Gen., and *Smith C. Matson*, Asst. Atty. Gen., for the State.

DOYLE, JUDGE. The assignments of error argued in the brief and orally before the court by defendant's learned and zealous counsel relate to defects in the recitals of the record. Considered as criticisms of the mode and manner of keeping the minutes of the trial they are well founded, but as presenting grounds of error for which the judgment should be reversed, they are not well taken. This is our conclusion after a careful examination of the record:

It is assigned as error that:

"1st: There is nothing in the record to show that the necessary steps were taken, what action was had, if any, of the history of the cause, if there is any history, immediately before and up to the filing of the indictment by the clerk."

"2nd: There is no journal entry or entry upon the minutes of the court showing that the indictment when found by the grand jury was presented to the court as required by statutes. As to this matter there is no record entry whatsoever."

Under these assignments it is contended that there is nothing in the record showing when the court convened, where it con-

vened, who was the presiding judge, or that the indictment was returned by the grand jury in open court; and that:

"Any statements appearing in the indictment itself not required by the statute should be treated as surplusage. Such statements cannot be substituted for the record which precedes the indictment. Section 6692, Snyder's Sts., provides that: 'An indictment, when found by the grand jury, must be presented by their foreman, in their presence, to the court, and must be filed with the clerk, and remain in his office as a public record.' Section 6919, Snyder's Sts., provides that: 'When judgment upon a conviction is rendered, the clerk must enter the same upon the minutes, stating briefly the offense for which the conviction has been had, and must immediately annex together and file the following papers which constitute the record of the action: 1st. The indictment and a copy of the minutes of the plea or demurrer. 2nd. A copy of the minutes of the trial. 3rd. The charges given or refused, and the indorsements if any thereon; and, 4th. A copy of the judgment.'"

There was no question raised by motion to set aside the indictment, or in the motions for a new trial and in arrest of judgment, that said indictment was not found, presented and filed as prescribed by law, or that the grand jury was not drawn and empaneled as provided by law. Under the provisions of our Criminal Code, it is not the duty of the clerk to make an entry upon the minutes or journal of the court of the return of an indictment. It is the clerk's duty to note on the indictment that it was presented in open court by the foreman of the grand jury, in their presence, to the court and to file it, and when so filed the original indictment, with all its indorsements, becomes a part of the record of the case, and whatever is properly shown by the caption and the indorsements is considered as shown by the record. The indictment in its caption shows that it was in the district court of the Fourth judicial district of the state of Oklahoma, held in and for Pittsburg county in said state; was returned and presented at the October term of the district court, convened on the 5th day of October, 1908. It is signed by the county attorney of that county and indorsed by the foreman of the grand jury

5 Cr—20

as "A True Bill". On the back of the indictment are these indorsements: "Presented in open court by the foreman of the grand jury in the presence of the grand jurors and filed this 28th day of October, 1908. W. B. Riley, Clerk of the Court." The names of the witnesses are also indorsed thereon.

The indictment itself being a part of the record proper, on file, with the date and manner of its return, the attestation of the county attorney and the foreman of the grand jury constitutes it a necessary part of the record by the terms of the statute. The record therefore shows that this indictment was found and returned in the manner and by the means prescribed by law.

"The indictment itself being a part of the record proper and always on file, certainly when it is authenticated as in this case by the genuine signatures and indorsements of the prosecuting attorney, foreman of the grand jury, and the circuit clerk, there can be no question in our opinion but that the *prima facie* presumption is that it was lodged in that court in the manner and by the means prescribed by law." (*State v. Lord,* 118 Mo. 1, 23 S. W. 764.)

See, also, *Beard v. State,* 57 Ind. 8; *Pudgetl v. State,* 3 N. E. 377; *State v. Weaver,* 104 N. C. 758, 10 S. E. 486; *McKee v. State,* 82 Ala. 32; *State v. Schill,* 27 Iowa, 263; *Cooper v. State,* 59 Miss. 267; *State v. Crilly,* 77 Pac. 701.

In the case of *John Hopkins v. State,* 4 Okla. Cr. 194, 108 Pac. 420, it was said:

"When an indictment is duly returned as a true bill, properly indorsed, and with the signature of the foreman, the presumption is that it was regularly found on legal evidence and by the requisite number of jurors. The presumption of regularity is in favor of the indictment."

The third assignment of error is that:

"The record fails to show that the appellant was present when the jury returned its verdict, or that he was even present at all on the second and last day of the trial."

It affirmatively appears from the record that the defendant was in charge of the sheriff during the trial; that he was present when the case was called for trial; that the trial lasted two days;

that he took the stand on his own behalf on the second day; and that he was present in court when the jury returned their verdict, at which time he was remanded back to jail to await sentence. This question is raised for the first time in the petition in error in this court. In the case of *Sam Wood v. State,* 4 Okla. Cr. 436, this question was passed upon, and the authorities fully reviewed in the opinion of the court delivered by Furman, Presiding Judge.

The fourth assignment is that:

"The officer in whose charge the jury was placed after the cause was submitted to them was not sworn as required by the statute."

The record recites, "the jury retired in charge of a sworn bailiff to consider their verdict, and thereafter returned into open court with the following verdict * * *." No objection was made to the form of the oath when the bailiff was sworn, or at any other time prior to its presentation in this court. If there was any irregularity in this respect, it should and probably would have been objected to at the time it occurred. If the form of the oath was defective, the attention of the court should have been called to it when the bailiff was sworn, so that it might have been corrected. It is no part of the duty of the clerk to place on record the form of the oath to the bailiff. It is only necessary for him to note the fact that this officer was duly sworn as required by law, and upon this recital in the minutes the presumption will be that the oath was properly administered. While the recital in the record defectively states this fact, we believe it is sufficient.

The fifth assignment is hypercritical.

The sixth assignment is that:

"The record fails to show that upon the jury being permitted to separate that they were admonished by the court as required by statute."

The record shows that during the trial there was one adjournment of the court. The record further recites that, "It being adjourning time, the jury were permitted to separate under

the usual instructions of the court until tomorrow morning at nine a. m., January 7th, 1909." No objection was made or exception taken to any instruction given by the court or to the failure of the court to admonish the jury as required by statute. And no such question is presented by the motion for a new trial. The presumption must therefore be that the jury were admonished by the court, "That it is their duty not to converse among themselves or with any one else on any subject connected with the trial, or to form or express any opinion thereon, until the cause is finally submitted to them."

The seventh assignment is that:

"There is nothing in the record to show that the verdict of the jury was read to the jury by the clerk or inquiry made of them whether it was their verdict."

No question of this kind is presented in the motion for a new trial, nor does the record show that the defendant requested that the jury be polled. The statute requires that when the jury appear, they must be asked by the court or clerk whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same. Section 6872, Snyder's Sts. Section 6881, Snyder's Sts., provides that:

"When the verdict is given, and is such as the court may receive, the clerk must immediately record it in full upon the minutes, and must read it to the jury and inquire of them whether it is their verdict. If any juror disagree, the fact must be entered upon the minutes, and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case."

We think the minutes of the trial sufficiently show that the requirements of the statute were complied with, and a more conclusive answer on this point is that no objection was made on the part of the defendant to the proceedings had, and if there was any irregularity in this respect, it should, and probably would, have been objected to at the time it occurred. It may be observed, however, that a careless disregard of the requirements of the statute as to what the minutes of the trial should show is unpardonable.

The requirements are simple and the minutes should show: the presence of the defendant when the case was called for trial, and that at each adjournment of the court the jury was properly admonished by the court as required by law; that upon the convening of the court the presence of the defendant be noted; also whether the court permitted the jury to separate or ordered the jury kept in charge of officers; that said officers were properly sworn; that when the jury is brought into court for instructions or to return their verdict, that they were so conducted into court by the officers having them in charge, and that the defendant was present in person; that the verdict was read to the jury, and proper inquiry made.

The eighth and ninth assignments relate to the instructions. No exception is saved to the instructions given by the court and none were requested on the part of the defendant, and the questions were not raised in the defendant's motion for a new trial. From our examination of the instructions given, they fairly and correctly state the law of the case.

The tenth assignment is that:

"This cause should be reversed because of a variance between the sentence and the judgment of the court, and the charge in the indictment and the verdict of the jury."

This assignment is without merit. The jury by their verdict found the crime charged, to wit, robbery, was committed by John Jolly, conjointly with one Bill Colbert. At the time of the return of this verdict and the rendition of the judgment there was but one punishment that could be inflicted for robbery committed under such circumstances, that is, imprisonment for life.

We are of the opinion that the defendant has had a fair and impartial trial. If any errors were committed in making the record, they are technical and unimportant and not such as would justify a reversal of the conviction. The few exceptions taken to the rulings of the court upon the trial were without merit and have not been argued here. The crime committed was most heinous: an old, sick, and helpless man was brutally attacked in his own home, overpowered and robbed, bound hand and foot;

a stick of wood driven down his throat, and in that helpless condition left to die. The verdict was warranted by the proof and the punishment fixed by the law is well deserved. The verdict and judgment has our approval.

The judgment is therefore affirmed.

FURMAN, PRESIDING JUDGE, and ARMSTRONG, JUDGE, concur.